UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHERRY A. RAMSEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:12-CV-1003-NAB |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

      This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Sherry A. Ramsey's ("Ramsey") application for a period of disability and disability insurance benefits and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act.  Ramsey alleges disability due to back problems, fibromyalgia, chronic fatigue syndrome, restless leg syndrome ("RLS"), osteoarthritis, and chronic joint pain.  (Tr. 185.)  The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  [Doc. 11].

**I.**    **Procedural History**

      On January 22, 2010, Ramsey filed applications for a period of disability, disability insurance benefits, and SSI benefits.  (Tr. 128-39).  The Social Security Administration ("SSA") denied Ramsey's claim and she filed a timely request for a hearing before an administrative law judge ("ALJ").  (Tr. 66-77, 80-88).  The SSA granted Ramsey's request and the hearing took place on January 27, 2011.  (Tr. 26-59).  The ALJ issued a written decision on March 14, 2011.  (Tr. 12-22).  Ramsey requested review of the ALJ's decision from the Appeals Council.  (Tr. 8).

On May 2, 2012, the Appeals Council denied Ramsey's request for review. (Tr. 1-4). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Ramsey filed this appeal on June 5, 2012. [Doc. 1] The Commissioner filed an Answer on August 10, 2012. [Doc. 13]  Ramsey filed a Brief in Support of her Complaint on September 7, 2012. [Doc. 15] The Commissioner filed a Brief in Support of the Answer. [Doc. 20]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222

F.3d 448, 451 (8th Cir. 2000).  If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision.  *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994).  Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984).  An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.  *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III.     ALJ's Decision

The ALJ determined that Ramsey met the insured status requirements of the Social Security Act through December 31, 2009 and she has not engaged in substantial gainful activity since March 15, 2009, the alleged onset date of disability. (Tr. 14). The ALJ found that Ramsey had the severe impairments of fibromyalgia and obesity. *Id.* The ALJ also found that Ramsey does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.) The ALJ determined that Ramsey had the residual functional capacity ("RFC") to perform light work with the following limitations: (1) lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, (2) standing and walking for at least two hours total in an eight-hour workday, (3) sitting for at least six hours total in an eight-hour workday, (4) never crawling or climbing ladders, ropes, or scaffolds, (5) kneeling rarely, (6) stooping and crouching occasionally, and (7) engaging in frequent, though not continuous, use of the left (non-dominant) hand to grasp, handle, or finger. (Tr. 16-17.) He also determined that Ramsey could perform her past relevant work as a tax preparer, because the work does not require the performance of work-related activities precluded by the claimant's RFC. (Tr. 21.) Finally, the ALJ concluded that Ramsey has not been under a disability, as defined in the Social Security Act from March 15, 2009, through the date of the decision. (Tr. 22).

### IV.     Administrative Record

The following is a summary of relevant evidence before the ALJ:

4

### A. Hearing Testimony

The ALJ heard testimony from Ramsey; David Lindke, Ramsey's ex-husband; and Steven Dolan, the vocational expert ("VE").

### 1. Ramsey's Testimony

Ramsey testified she was fifty-one at the time of the hearing. (Tr. 34.) Ramsey has previously worked as a cashier, tax preparer, licensed real estate agent, manager, and cook. (Tr. 34-37.) Ramsey's work as a tax preparer ended due to tax season ending and Ramsey moving to another state. (Tr. 34.) Ramsey stopped working as a realtor due to a drop in the market and her real estate license expired in 2007. (Tr. 35-36.) When she worked as a manager at the gas station, she was responsible for all store operations including employee schedules, payroll, bank deposits, cooking, and cleaning. (Tr. 36.) Ramsey also served as the owner, cashier, and stock person at a produce market in 1999 and 2000. (Tr. 37.)

In 1987, Ramsey testified that she had back surgery that involved the removal of herniated discs and replacement with acrylic discs. (Tr. 38-39.) Ramsey stated that she had ongoing discomfort from the back surgery that affected her feet and started problems with her hips. (Tr. 39.) Ramsey had an MRI done in 1991, which showed she had a herniated disc. (Tr. 40.) The back problems caused muscle spasms in the lower back quite often and her doctor issued muscle relaxers and physical therapy. (Tr. 40.) Ramsey testified that she could no longer work full time in 2000 or 2001 when she became really ill- unable to keep food down and sleeping unusual amounts of time. (Tr. 41.) Ramsey received a diagnosis for diabetes, which is now controlled by her diet. (Tr. 41.) Ramsey also felt that her bones were hurting. (Tr. 41.) Dr.

Martha Reed diagnosed Ramsey with fibromyalgia in 2000.  (Tr. 41-42.)  Ramsey has also been diagnosed with restless leg syndrome.  (Tr. 45.)

Ramsey worked until March 2009.  (Tr. 41.)  Ramsey stated that she stopped working, because she had a lot of unclear days and her head was "like in a fog."  (Tr. 41.)  Ramsey also stated that her fibromyalgia medication makes her "foggy."  (Tr. 46.)  She was steadily getting worse and she was having extreme difficulty concentrating and counting money.  (Tr. 42, 45.)  Ramsey stated that her former supervisor commented to her about the time she spent counting money before and after her shift.  (Tr. 46.)  Ramsey stated that subsequently, her hours were cut.  (Tr. 46.)

Ramsey testified that she experiences pain in her arms, legs, back, feet, and chest bone.  (Tr. 43.)  She has trouble focusing on a simple conversation sometimes.  (Tr. 43.)  Ramsey stated that there are days when she can't unbutton clothing or pull clothing over her head.  (Tr. 43.)  Ramsey sleeps two hours at a time.  (Tr. 45.)  She wakes up hurting and very stiff.  (Tr. 45.)  At the time of the hearing, Ramsey testified that she was taking Lisinopril, Trazadone, and Ibuprofen.  (Tr. 47.)  Also, at the time of the hearing in January 2011, Ramsey had not seen Dr. Reed since March 2010 and had not gotten her prescriptions re-filled due to lack of funds.  (Tr. 47.)  Ramsey testified that she smoked less than half a pack of cigarettes on a typical day.  (Tr. 48.)

Ramsey testified that she lives with her ex-husband David Lindke.  (Tr. 44.)  Lindke has to remind her to take her medication.  (Tr. 44-45.)  Ramsey spends three to four hours per day watching television and hour a day on the computer "surfing and reading."  (Tr. 49-50.)  Ramsey stated she can cook meals on some days, but she does not shop, sweep, mop, or drive.  (Tr. 49, 51.)  Ramsey also testified that can do dishes and the laundry sometimes.  (Tr. 49-50.)

6

### 2. David Lindke

Lindke testified that since March of 2009, Ramsey has had problems with her balance and being fatigued and lethargic. (Tr. 52.) Lindke also stated that Ramsey's mental capacity has deteriorated greatly. (Tr. 53.) Ramsey cannot remember the location for her keys or the content of what is said on television. (Tr. 53.) Lindke testified that he helps Ramsey to rise and sit on the commode, move in and out of the shower, and prepare meals. (Tr. 53.) Ramsey's wincing and facial expressions demonstrate that she is in pain. (Tr. 53.) Ramsey awakens three or four times during the night, but on occasion she sleeps for hours or days. (Tr. 54.) Ramsey has a lot of pain at night. (Tr. 54.) Lindke gives Ramsey her medication and takes her to the doctor. (Tr. 55.)

### 3. VE John Dolan

The VE testified that Ramsey's work as a cashier was unskilled with a light exertional level generally and as performed. (Tr. 57.) Ramsey's job as a retail store manager is skilled and medium as it was performed. (Tr. 57.) Ramsey's work as a real estate sales person was skilled with a light exertional level. (Tr. 57.) The VE also stated that Ramsey's work as a tax preparer was semi-skilled with a sedentary exertional level. (Tr. 57.)

## B. Medical Records

On July 20, 2006, an x-ray of Ramsey's left hip and pelvis was normal with no fractures or dislocations and no bone texture or soft tissue abnormality. (Tr. 248.) Dr. Martha Reed treated Ramsey between 2006 and 2010. (Tr. 243-48, 259-63.) A partial note from November 3, 2006 showed that Ramsey had the problems of stress incontinence and was referred to Dr. Houttuin. (Tr. 245.) Ramsey visited Dr. Reed twice in 2007. (Tr. 245.) Dr. Reed prescribed

7

Celebrex for arthritis on an as needed basis. (Tr. 245.) On May 16, 2007, Ramsey received a mid-urethral transobturator sling procedure[1] from Dr. Houttuin. (Tr. 245.)

On May 14, 2009, Ramsey visited Dr. Reed complaining of severe fibromyalgia, poor sleep, legs feeling "crawlish," and pain everywhere. (Tr. 244.) Dr. Reed noted that Ramsey had a normal physical examination with the exception of high blood pressure, poor color, and a few scattered rhonchi[2] in the lungs. (Tr. 244.) Dr. Reed noted that Ramsey's problems included fibromyalgia, hypertension, glucose intolerance, RLS, nicotine addiction, and gastroesophageal reflux disease ("GERD.") (Tr. 244.)

On June 29, 2009, Ramsey visited Dr. Reed for a routine visit. (Tr. 244.) Dr. Reed noted that Ramsey had poor color and her physical examination had no change since her visit on May 14, 2009. Ramsey reported that the Darvocet medicine was not effective. (Tr. 244.) Dr. Reed adjusted Ramsey's medications and told her to follow up as needed in 2 to 3 months. (Tr. 244.) On July 13, 2009, Ramsey reported to Dr. Reed that she was "cloudy and fuzzy headed" and her muscle spasm pain was worse in her upper legs and arms and not getting better. (Tr. 244.) Ramsey also reported that she was unable to get her blood work done, because she did not have any insurance. (Tr. 244.)

On August 26, 2009, Dr. Reed noted that Ramsey came to the examination with her "gentleman friend," who reported that Ramsey was forgetful, had bad balance, slept all of the time, and was lethargic. (Tr. 243.) Dr. Reed examined Ramsey and found that she had poor color, regular heart rate, clear lungs, normal neck and abdomen, and no ankle edema. (Tr. 243.)

---

[1] A transobturator sling procedure treats stress incontinence by using a sling made of either natural or synthetic tissue and placing it around the bladder's neck and attaching it to the pubic bone. *WebMD*, http://www.webmd.com/urinary-incontinence-oab/america-asks-11/stress?page=2 (last accessed on September 23, 2013).

[2] Rhonchi are added sounds "with a musical pitch occurring during inspiration and expiration, heard on auscultation of the chest and caused by air passing through bronchi that are narrowed by inflammation, spasm of the smooth muscle or presences of mucus in the lumen. Stedman's Medical Dictionary 1568 (27th ed. 2000).

Dr. Reed found that Ramsey had normal finger to nose, alternating hand movements, normal Rhomberg, and normal heel to toe movements. (Tr. 243.) Dr. Reed determined Ramsey had the problems of deconditioning[3], adult-onset diabetes mellitus ("AODM"), and the other problems listed at her May 2009 visit. (Tr. 243.) Dr. Reed recommended Ramsey decrease cigarette smoking, exercise daily, see a dietician for diabetes control, lipid improvement, and weight reduction. (Tr. 243.)

On March 5, 2010, Dr. Barry Burchett completed a physical medical consultative examination of Ramsey. (Tr. 250-56.) She reported that she had arthritis and fibromyalgia. (Tr. 250.) Ramsey complained of deep generalized body pain, recurrent spasm of various muscles, chronic fatigue, poor sleep, persistent numbness in her left great toe, and pain in all of her joints, except the left ankle. (Tr. 250-51.) Dr. Burchett's examination revealed that Ramsey ambulated with a normal gait, which was not unsteady, lurching, or unpredictable, and does not require the use of a handheld assistive device. (Tr. 252.) Dr. Burchett also noted that Ramsey's recent and remote memory for recent events was good. (Tr. 252.) He determined that eleven of eighteen standard fibromyalgia trigger location points were reported as tender and three of ten control points were reported as tender. (Tr. 252.) Examination of Ramsey's head, ear, nose, throat, chest, heart, abdomen, extremities, and spine were substantially normal with slight swelling in the left thumb IP joint and moderate limitation of range of motion in her right shoulder and bilateral hips. (Tr. 254.) Dr. Burchett found that otherwise, there was full range of motion of all joints. (Tr. 254.) Dr. Burchett diagnosed Ramsey with possible fibromyalgia and probable osteoarthritis of multiple locations. (Tr. 253.)

---

[3] Deconditioning means to cause or lose fitness or muscle tone, especially through lack of exercise. Oxford Dictionaries Pro, http://english.oxforddictionaries.com/definition/decondition?region=us#m_en_us1238871.002 (last accessed September 23, 2013).

On March 24, 2010, Ramsey visited Dr. Reed with complaints of back pain, cough, generalized weakness all over, fogginess, inability to grip steering wheel, muscle spasms, lightheadedness, and memory loss. (Tr. 260.) Dr. Reed noted that Ramsey had the following problems: acute bronchitis, chronic obstructive pulmonary disease, arthritis, AODM, muscle spasm, RLS, possible fibromyalgia, GERD, hypertension, and nicotine addiction. (Tr. 261.) Dr. Reed ordered several tests, urged Ramsey to discontinue smoking, and told her to follow-up in three months or as needed. (Tr. 261.)

**V.      Discussion**

Ramsey alleges two errors on review. First, Ramsey asserts that the ALJ erred in finding that her disorder of the spine did not constitute a medically determinable impairment and the ALJ failed to perform his duty to fully and fairly develop the record. Second, Ramsey contends that the ALJ failed to give proper consideration to her fibromyalgia symptoms.

   **A.      Spine Impairment**

Ramsey asserts that the ALJ erred in his determination that her "spine disorder" is not a medically determinable impairment and that the ALJ failed to fully develop the record. The Court disagrees. An impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1508, 416.908. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. *Id.*

The ALJ determined that the available medical records do not contain evidence of past surgery, disc disease, or herniation. (Tr. 16.) The ALJ also determined that there was no objective medical evidence in the record any current spinal or lumbar impairments or diagnosis

10

of any such impairment.  (Tr. 16.)  Therefore, the ALJ concluded that there was no medical evidence in the record to establish any disorder of the spine or discs as a medically determinable impairment.  (Tr. 16.)  The Court finds that the ALJ's decision is supported by substantial evidence on the record as a whole.  Ramsey testified that she has back problems stemming from lumbar surgery performed in 1987 for a disc herniation.  (Tr. 38-39.)  She also testified that in 1991 Dr. Crawford at Jefferson Memorial Hospital performed an MRI on her, which confirmed disc herniation at L3 and L4.  (Tr. 39-40.)  Ramsey's testimony that she has a spine disorder is not sufficient alone to establish that she has a medical impairment.  20 C.F.R. § 1528(a) (claimant's statements alone not enough to establish existence of mental or physical impairment).  Further, the fact the Ramsey had a disc herniation 18 years prior to the alleged onset date is also not sufficient evidence that she currently has back problems.

Next, Ramsey contends that the ALJ failed to fully develop the record regarding whether she had a spine disorder.  "There is no bright line test for determining when the [Commissioner] has failed to develop the record.  The determination in each case must be made on a case by case basis."  *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).  A claimant for social security disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning.  20 C.F.R. §§ 404.1512(c), 416.912(c).  The ALJ has a duty to fully develop the record.  *Smith v. Barnhart,* 435 F.3d 926, 930 (8th Cir. 2006) (citation omitted). This duty requires the ALJ to develop a complete medical history for the claimant for at least twelve months preceding the month in which the claimant's application was filed before making a determination.  20 C.F.R. §§ 1512(d), 416.912(d).  In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before

11

rendering a decision. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b). The ALJ's duty is enhanced when the claimant is without counsel. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002). "[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995). "A claimant bears the burden of proving the ALJ failed to adequately develop the record and this failure resulted in prejudice." *Sullins v. Astrue*, No. 4:10-CV-1014 MLM, 2011 WL 4055943 (E.D. Mo. Sept. 6, 2011) (citing *Onstad v. Astrue*, 999 F.2d 1232, 1234 (8th Cir. 1993)).

In this case, the Court finds that the record was sufficiently developed to allow the ALJ to make a disability determination. First, the ALJ ordered a consultative examination for Ramsey. There was no evidence in the sparse medical record provided by Ramsey or Dr. Burchett's consultative examination that showed further development of the record was necessary. Second, Ramsey was represented by counsel and the ALJ granted two requests for an extension of time to obtain additional medical records. (Tr. 30-33, 235-240.) Ramsey did not submit any additional medical records to the ALJ or to the Appeals Council. Third, Ramsey has not shown prejudice. Ramsey has failed to state what further medical evidence she believes is necessary to develop the record.

Finally, Ramsey contends that the ALJ should not have discounted Ramsey's testimony regarding the fact that she had undergone back surgery and improperly discounted her allegation of back pain. "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the

claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any participating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions

*Id.* "The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints." *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir. 2004). Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen,* 862 F.2d 176, 179 (8th Cir. 1988).

The Court finds that the ALJ properly addressed Ramsey's credibility regarding her previous medical treatment and allegations of pain. The ALJ provided a detailed analysis of the inconsistencies between Ramsey's disability function report, her testimony, and the medical records. (Tr. 16-21.) For example, the ALJ noted that Ramsey stated on her function report that the dexterity in her hands was almost "non-existent" and very painful. (Tr. 19, 217.) At the consultative examination, Dr. Burchett found that there was no swelling, atrophy, redness, warmth, or tenderness on her hands. (Tr. 253.) He also found that both hands could be fully extended, all fingers could oppose, and a fist could be made with both hands. (Tr. 253.) Dr. Burchett also found that Ramsey was able to write and pick up coins with either hand without difficulty and the range of motion in the joints of the fingers of both hands was normal (Tr.

13

253.)  In addition, the ALJ found that Ramsey's limited treatment history, in conjunction with the other evidence of record, calls into question her allegations of disabling symptoms and limitations.  (Tr. 20.)  *See Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)) ("'While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem'").  The ALJ also noted that Ramsey did not require emergency care nor has she been referred to a rheumatologist, neurologist, or other specialist during the alleged period of disability.  (Tr. 20.)  Finally, the ALJ did not "disbelieve" that Ramsey had surgery.  The ALJ noted that there was no evidence of the surgery, there were few complaints of back pain, and that Ramsey had not received any diagnosis of any spine impairment.  (Tr. 16.)  The Court finds that the ALJ's determination of Ramsey's credibility is supported by substantial evidence.

      **B.**     **Fibromyalgia**

Next Ramsey contends that the ALJ failed to give proper consideration to her fibromyalgia symptoms.  The ALJ found that Ramsey's fibromyalgia was a severe impairment.  (Tr. 14.)  The ALJ noted that the consultative examiner observed that Ramsey exhibited tenderness at 11 of 18 standard trigger points and three of ten control points.  (Tr. 19.)  Ramsey does not describe what limitations the ALJ should have included regarding her fibromyalgia symptoms that are not included in the RFC.  Ramsey is correct that the Eighth Circuit has found that fibromyalgia has the *potential* to be disabling.  *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (emphasis added).  A diagnosis of fibromyalgia alone is not sufficient to find that Ramsey is disabled.  *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled).  "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that

working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

## VI.   Conclusion

For reasons set forth above, the Court finds that the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Ramsey seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **DENIED**.  [Docs. 1,15.]

**IT IS FURTHER ORDERED** that the Court will enter a separate judgment in favor of the Commissioner.

Dated this 25th day of September, 2013.

　　　　　　　　　　　　　　　　　　　　　　  /s/ Nannette A. Baker                 .
　　　　　　　　　　　　　　　　　　　　　　NANNETTE A. BAKER
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE